| 57 | 621 |
|----|-----|
| 77 | 153 |
| 57 | 621 |
| 78 | 620 |
| 57 | 621 |
| 82 | 409 |
| 84 | 484 |
| 57 | 621 |
| 85 | 400 |

## D. C. FREEMAN v. W. H. MAHONEY ET AL

(Case No. 1212.)

1. SURVEY.— Three surveys were made in 1848 on land believed to be vacant, and patents issued thereon. The field notes of each survey called for the northern line of an older survey of a two-league grant as its southern boundary. The northern line of the older grant could not be identified by a marked line or by established corners at either end thereof, though in the grant its northeast corner was described with marked bearing trees, which after the lapse of years could not be found. The distance from the southern line (identified on the ground) to the northern line of the two-league grant was five thousand varas, as called for in the grant; but measuring from its southern line to the southern marked line of the three surveys made in 1848, the distance was about five thousand two hundred and forty varas. The supposed excess of two hundred and forty varas was located on and a patent

issued. In trespass to try title between those claiming under the two-league grant and the patentee of the supposed vacant strip, *held* —

(1) The discrepancy of two hundred and forty varas in a line of such length should not be given conclusive effect in determining whether there was vacant land between the old grant and the three later surveys.

(2) The northeast corner of the two-league grant being described therein, and being called for as a corner of one of the surveys made in 1848, by the surveyor who surveyed those surveys, and who also called in his field notes for the north line of the old grant as the south line of the three surveys, the presumption must prevail that the surveyor in 1848 saw the corner for which he called, and that his lines run were consistent with its location on the ground.

(3) Such presumption is not affected by the fact that the old corner, as called for by the surveyor of the three junior surveys, would be two hundred and forty varas beyond the distance reached in a line calling to run five thousand varas.

(4) The last locator, claiming a vacancy, must show that the call for the northern line of the two-league grant as being the southern line of the surveys made in 1848, was a mistake, and, under the facts, a mere excess of two hundred and forty varas in a line of five thousand varas did not prove that mistake.

ERROR from McLennan. Tried below before the Hon. L. C. Alexander.

Plaintiffs in error filed their petition March 15, 1876, against defendants in error in the district court of McLennan county, in trespass to try title to two tracts of land therein described, claiming the same as the separate property of Mary E. Freeman, and alleging damages at $1,000.

Defendants in error answered April 1, 1876, 1st, general demurrer; 2d, not guilty.

May 24, 1877, defendants in error filed an amended answer averring good faith and $4,000 for valuable improvements.

On the 7th of June, 1878, no jury having been demanded, the cause was submitted to the court and judgment rendered for defendants in error, to which plaintiffs in error excepted and gave notice of appeal.

The appeal not having been perfected, on the 7th of May, 1880, a writ of error was sued out, and error assigned as follows:

" The court should have rendered a judgment in favor of the plaintiffs, because the evidence shows that the land embraced in the B. C. Wallace patent and the E. J. Lowery patent, under which plaintiffs claimed, is not embraced by the T. J. Chambers two-league grant, under which the defendants claimed; and the evidence further showed that there was land lying between the said Chambers survey and the Rice survey which was covered by the patents to Wallace and Lowery, and said land was not embraced either in the Chambers or Rice surveys, and the judgment should have been for the plaintiffs."

The sketch showing the relative position of the surveys as claimed by plaintiff will make plain the opinion.

*Herring, Kelley & Williams*, for plaintiffs in error.

I. The court should have rendered a judgment in favor of the plaintiffs, because the evidence shows that the land embraced in the B. C. Wallace patent and the E. J. Lowery patent, under which plaintiffs claimed, is not embraced by the T. J. Chambers two-league grant, under which the defendants claimed; and the evidence further showed that there was land lying between the said Chambers survey and the Rice survey which was covered by the patents to Wallace and Lowery, and said land was not embraced either in the

Chambers or Rice surveys, and the judgment should have been for the plaintiffs. McCown *v.* Hill, 26 Tex., 359; Booth *v.* Strippleman, id., 436; Booth *v.* Upshur, id., 64; Robertson *v.* Mosson, id., 248; Blumberg *v.* Mauer, 37 Tex., 2; Jones *v.* Burgett, 46 Tex., 285; Stafford *v.* King, 30 Tex., 257; Jones *v.* Leath, 32 Tex., 329; Castleman *v.* Ponton, 51 Tex., 84.

II. The only known corner of the Chambers is the lower, or southeast on the river, and that was properly ascertained and identified, and controls all the calls of the grant. Bearing trees of this corner could not be found; line shown by old and well known citizens, which was an old marked line some distance out from the river to prairie. This line was recognized by owners of the land abutting thereon. Running from this southeast corner, according to the calls of the Chambers, the south and west or back lines, Cassiday demonstrates the vacancy between the Rice and Chambers with mathematical certainty. Stroud *v.* Springfield, 28 Tex., 649; Smith *v.* Russell, 37 Tex., 247; Bolton *v.* Lann, 16 Tex., 96; George *v.* Thomas, id., 74; De Leon *v.* White, 9 Tex., 598.

*Walton & Hill*, for defendants in error.

STAYTON, ASSOCIATE JUSTICE.— The only question involved in this cause is whether the land sued for, and patented to B. C. Wallace and E. J. Lowery, is covered by the older grant made to T. J. Chambers; for if so, the defendants claiming under that grant must prevail.

The time when the grant to T. J. Chambers was made does not appear in the record, but it is evident therefrom that it was made prior to the grants to S. Rice, John Hobson and John Morrow, which were made, or at least located and surveyed, as early as 1848.

The field notes of the three grants last above named each give the northern boundary of the grant to Chambers as its southern boundary, and if this be true, there was no vacant land between the grant to Chambers and the grant to Rice which could be granted to Wallace and Lowery or their assigns. The patents to them were issued upon surveys made some time since 1871, the exact date not appearing in the record.

The plaintiffs in error base their position that the grant to Chambers was not contiguous to the grants to Hobson, Morrow and Rice, upon the fact that, upon actual measurement, from the south line of the Chambers grant, as recognized by persons owning parts of that grant and by persons owning parts of the grant below, it is found that the distance from that line to the south line of the grant to

Rice exceeds by about two hundred and forty varas the distance called for as the width of the Chambers grant, which is five thousand varas. In a line of such length this discrepancy ought not to be given conclusive effect, and especially so in surveys made at an early day, when lands were of but little value, and there was great carelessness in measurements, as is known to every one who has had occasion to examine surveys made at that time.

The rules for the ascertainment of boundaries have been so often announced by this court that it is not deemed necessary here to repeat them. It is true that, if there were no natural or artificial objects called for in the Chambers grant by which its boundaries could be established, then the same would be established by course and distance; but if a survey was made (and we are to presume that it was), and natural or artificial objects were called for for its identification, the first inquiry in determining the boundaries of the grant is, where did such objects stand? If they are found and identified, although short of or beyond the place at which course and distance would place the boundary, they must control.

It appears that the northeast corner of the Chambers grant was established by bearing trees which were described in the face of the grant, and which cannot now be found, for the reason that they have been destroyed, and the place where they probably stood covered by a thriving city. The surveyor who, about the time of the trial, or some time before the Wallace and Lowery surveys were made, made search for the upper line of the Chambers grant, testified that he found none of the bearing trees called for in the grant, and that he " had never seen any marked line for the upper line, next the river; it was right in the city of Waco; and out of the city it was in the prairie;" but he says that the south line of the Morrow grant had marked trees on it, and that he could not tell whether they were surveyor's marks or not.

Course and distance, in the absence of some more certain means of establishing boundary, are resorted to for the purpose of establishing where the line was originally run and established, and is evidence of that fact which ought to prevail in the absence of other evidence, in a case tending with reasonable certainty to establish a different result.

In this case the southeast corner of the Morrow grant is called for as the northeast corner of the Chambers grant. The locality of this corner of the Morrow grant seems not to be controverted; the line running away from the river from that point runs in the same

direction as the north line of the Chambers grant; hence they must be contiguous grants, unless the call for the Chambers corner was a mistake. The southern lines of the grants to Hobson and Rice, the locality of which is not questioned, and which are but a prolongation of the southern line of the Morrow grant, in the face of the grants, are said to be identical with the northern line of the Chambers grant.

When we take into consideration the fact that all these surveys were made many years ago, and that the surveyors who made them in all probability saw the country when the natural objects called for in the Chambers grant still existed, we are not authorized to believe that they made statements under their official oaths which they did not know to be true, upon proof of the simple fact that to make the upper line of the Chambers grant where it was so declared to be, the grant would be to a trifling extent wider than stated to be in the field notes.

It rested with the plaintiffs in this cause to show that the call for the northern line of the Chambers grant as the southern boundary of the Rice grant was a mistake, and we are of the opinion that the court did not err in holding that this evidence was not sufficient to show such mistake.

As was held in the case of Freeman v. Gerald, 2 Tex. Law Jour., 744, a mistaken call for the line of an older survey, when such line is in the open prairie, and unmarked or undefined, should not prevail over a call for course and distance from an established corner.

In that case there was proof of facts which showed that the call for the line of an older survey was a mistake, and how and where the lines of the junior survey were actually run and established. In this case there is no evidence of such mistake, save that to make the call for the line of the elder grant correct, that grant will have a slight excess of land.

He who at this late day when lands have become valuable, and those who originally surveyed them have passed away, makes a location between grants which surveyors who originally surveyed them, more than thirty years ago, under their official oaths, declared to be contiguous, should come prepared with evidence which will clearly show that such declarations were made in mistake, and such testimony must consist of something more than that one or both of the grants will be slightly in excess of the area called for, to make such declarations good.

An excess might be so large as in itself to show that the call for another grant was a mistake, and in such case course and distance would control.  Such is not this case.

The judgment is affirmed.

AFFIRMED.

.[Opinion delivered November 29, 1882.]