JOHN MATTHEWS ET AL. V. JOHN THATCHER ET AL.

Decided June 25, 1903.

1.—Boundaries—Lost Corners—Course and Distance.

In an action to determine the boundaries of an old survey some of whose corners, originally called for as "stake in prairie," can not be identified, evidence showing other adjoining surveys, made subsequently by different surveyors, identifying such corners by artificial objects not called for in the field notes of the older survey, is not admissible to extend the distances in the older survey from its known corners.

2.—Same—Evidence—Common Repute.

Common repute as to the location of a line or corner of an old survey is admissible in aid of the search for its original corners; and that one of the corners was referred to in subsequent adjoining surveys, and that its east line and the corner were made a county boundary by legislative act, is admissible on the issue of local public interest in the location of the corner, so as to form a basis for the admission of evidence of general reputation.

3.—Same—Corner Pointed Out—Hearsay.

A witness could testify that in 1852 an old stake was pointed out to him as the corner, and at that time and ever since the point was generally reputed to be the true corner, such testimony not being inadmissible as hearsay because the witness was not present when the stake was driven.

4.—Same—Hearsay.

But declarations of one since dead, who was not the owner of the land nor shown to be in a position to know the corner of the survey, that a certain tree was one of its marked corners, was not admissible.

5.—Same—Claim of Deceased Owner.

The witness could state, however, that while assisting the owner, since deceased, in re-marking his boundaries, the latter claimed a certain corner as one of his corners.

6.—Same—Resurvey Made by Owner.

A witness who had made a resurvey of the land after suit begun, based on corners pointed out by the defendant, could detail the conditions and distances disclosed by his survey, but it was improper for him to state that at least fifty other surveys would be affected by the change proposed by plaintiffs.

7.—Same—Secondary Evidence—Surveyor's Records.

It was not competent for the county surveyor to testify that the records of his office recognized a corner as claimed by defendant as the corner of a certain county, the records not being produced or accounted for.

8.—Same—Excess in Other Surveys.

Where, in determining the boundaries of an old grant, it must be constructed on its calls for course and distance, it is not competent to show that other old surveys in that vicinity contained excessive acreage.

9.—Same—Course and Distance—Unidentified Stake.

It was error for the court to charge that the location of a certain stake as a corner of the survey was the controlling inquiry, and if the jury found where the original surveyor placed it, that would determine the controversy; as the call for the stake, with no marks or bearings given in the original field notes, could not control the call for distance from the beginning corner.

10.—Argument of Counsel—Reading Cases to Jury.

In an action to determine a boundary line counsel should not be permitted to quote in his argument to the jury a decision of the Supreme Court in another case, and direct their attention to a statement therein in relation to "ripping up of old land titles."

Appeal from the District Court of Colorado. Tried below before Hon. M. Kennon.

*Adkins & Green,* for appellants.

*Brown, Lane & Garwood,* for appellees.

GILL, Associate Justice.—This is a boundary suit brought in the form of an action of trespass to try title to recover of appellees the Matthews survey, patented to appellants on May 2, 1901. The Matthews location is on a supposed vacancy between the Cartwright and later surveys to the north of it, and the Matthews field notes call for the north line of the Cartwright as its southern boundary. The true location of the north line of the Cartwright league was the matter in dispute, and upon conflicting evidence the verdict and judgment were for appellees. The cause is here upon appeal.

The field notes of the Cartwright call to begin at the southwest corner of the Rabb survey No. 9, on the north fork of the Colorado River. "Thence north 20 deg. east 13,400 varas to the northeast corner on stake in prairie. Thence north 70 west 2000 varas to the northwest corner on stake in prairie. Thence south 20 west 12,500 varas to the southwest corner on a cottonwood, marked No. 10, two feet in diameter, from which a mulberry bears south 20 west 10 varas, 12 inches in diameter. A cottonwood bears north 20 east 15 varas, 4 feet in diameter. Thence down the Colorado River with the meanders thereof, including in these lines one sitio of land. Variation of needle 10.37' east. Same being of date August 10, 1824."

The Rabb, or "survey No. 9," had been previously surveyed by the same surveyor constructing it on league No. 8, further down the river. The Rabb field notes call for course and distance from two corners on the river, the northern corners being open prairie corners. Its west line, which should coincide for its entire length with the east line of the Cartwright (the latter being 2200 varas longer), calls for a length of 11,200 varas to a corner on the Colorado River, "A cottonwood mkd 9 and 10, 18 inches in diameter. A cottonwood north 87 deg. west 3 varas, 9 inches in diameter. A hackberry bears south 78 deg. east 3 varas, 7 inches in diameter." We thus have the last or southwest corner of the Rabb accurately described by the surveyor as marked and evidenced by large trees the location of which with reference to each other is minutely given. In the Cartwright field notes it becomes the southeast corner of that survey. The southwest corner of the Cartwright is designated with equal minuteness of description. As the river now runs, the northeast corner of the Cartwright, as contended for by appellees, is over 657 varas too far from the river. The northwest corner as thus located makes its west line over 480 varas too long.

The testimony is undisputed that since 1852 the course of the river along the southern boundary of the Cartwright league has undergone

varied and marked changes, but as to the nature and extent of these changes the evidence, which is circumstantial, presents a conflict. As to the character and extent of these changes prior to 1852 no witness testifies, though the circumstances show beyond question that material changes had occurred between the years 1824 and 1852. To illustrate the extraordinary extent of these changes we call attention to testimony adduced by appellant to the effect that the southwest corner of the Cartwright should be located at a certain point on the river as it now runs, to reach which point the west line would cross the river twice. This is due to the fact that a bend in the river (according to appellants' contention) has cut through the west line of the survey in controversy.

What is claimed as the northwest corner of the Rabb was marked many years ago by a brick monument which was standing at the date of the trial, but there is no testimony that it was placed at the correct distance from the river corner called for in the field notes, and it is not claimed that the monument was erected by or under the direction of the original surveyor. As it stands now it is further from the river than the call justifies. Neither the corner nor bearing trees designated by the original surveyor to mark the river corners were found, nor is the place where they stood testified to by any witness. No witness testified who had ever seen them.

The theory of appellees is that parol evidence is admissible to show that the original surveyor actually established the northeast and northwest corners of the Cartwright as appellees now contend, and this notwithstanding it might have the effect to extend the calls for distance.

The appellant advances the theory that as the field notes are without ambiguity when applied to the ground, the appellees must establish the location of the original river corners from which the course and measured distance called for in the field notes will serve to locate the northeast and northwest corners and incidentally the north line of the league, and that extraneous evidence is inadmissible to vary the calls in the grant.

Inasmuch as the judgment must be reversed and the cause remanded for reasons which will hereinafter appear, we shall notice only those of the forty-six assignments of error which present points likely to recur or errors likely to be repeated upon another trial.

Under assignments sixteenth to twenty-first, inclusive, appellants complain of the admission of field notes of surveys adjoining the Cartwright and made subsequent thereto by different surveyors, in which the northwest and northeast corners thereof are called for and identified upon the ground by artificial objects called for in the subsequent field notes, though not in the field notes of the Cartwright.

The first proposition under these assignments presents broadly appellants' theory of the case as above stated, and opposes the introduction of any extraneous evidence which tends to locate the northeast and northwest corners otherwise than by course and distance from the river

corners. This proposition presupposes a known beginning corner, and, with this qualification, is so well established in this State as well as elsewhere that citation 'of authority in its support would seem superfluous. A few of the many authorities are cited in Jemison v. New York and Texas Land Co., Ltd., recently decided by this court. Where a grant describes land by course and distance only, or by that and calls for objects not distinguishable from other objects of like kind, course and distance, though not the safest guides, are the only guides left us, and must be followed. Chenoweth v. Haskell, 3 Peters, 96. For the purpose of locating and identifying beginning corners extraneous evidence is always and necessarily admissible. The inhibition is against the admission of such evidence to vary or extend the calls for course and distance from the known corner. In the grant in question no natural objects are called for except at the first and last corners on the river. The other two corners are on stakes in the open prairie. If stakes were in fact planted by the original surveyor (which is not shown to have been done), they were neither marked nor described so as to be distinguished from any other object of like character. No surrounding surveys are mentioned except the Rabb, and only its southwest corner is called for.

The evidence was inadmissible to vary or extend the calls in the grant, but whether, under the facts in this case, it was admissible upon other grounds is another queston. As has already been stated, the changing river and the lapse of time have obliterated the large trees which marked the river corners when the survey was made in 1824. Those corners have become mere unmarked points upon the face of the earth, to be found and identified from such known circumstances as can be adduced; no living witness undertaking to say with certainty where the ancient marks stood. It follows that if no direct evidence can be found bearing upon the true location of those corners, the points where the original surveyor actually went in placing the northeast and northwest corners, if they can be shown, may be looked to in determining the first inquiry. Not as conclusive upon the question, but to be considered in connection with all the other facts and circumstances properly bearing upon the question. Thus, if the two river corners could not be accurately identified upon the ground on account of the unknown changes in the river bed in the last eighty years, but it could be safely determined that the changes in the river at the point of contact with the league lines had not exceeded certain known limits, then the *maximum* distance of the northern corners from the known limits of the changes could not be extended by proof that such corners were reputed to be or had actually been placed further north than the distance called for in the grant. Upon this principle common repute as to the location of any line and corner of the survey is admissible in aid of the search for the original corners. If upon all the evidence the jury determined that the beginning corners are further from the northern corners (as established by common repute) than the calls in

the grant would authorize, then the reputed northern corners must yield to the stipulated distance from the beginning points as found, and the jury should be so instructed. The reputed location of the northern corners is admissible under the facts of this case, but if it shall develop that the beginning corners are located from the other evidence within a radius necessarily inconsistent with the reputed northern corners, the latter cease to be useful for any purpose. This disposes in a general way of all the assignments addressed to appellants' theory of the case, and answers appellees' contention upon the points.

But under the assignments mentioned questions of detail are presented which must be disposed of in view of another trial. The sixteenth assignment embodies a complaint against the admission in evidence of certified copies of the field notes of G. H. & H. Ry. survey No. 1, made in 1873, as follows: "Beginning at N. E. corner of a league of land located in the name of Thomas Cartwright, a stake and mound from which Col. Matthews' house bears 72½ west and John Montgomery's dwelling bears south 59½." It is also a corner of the Wharton and Colorado County line. "Thence with the county line N. 45 E. 1901 varas, stake. Thence N. 45 W. 1901 varas, a stake. Thence S. 45 E. 1901 varas to place of beginning."

The seventeenth assignment complains of the admission of the field notes of the Blundell and Jackson surveys, made in 1882, which call for a stake the N. W. corner of the Cartwright, and the north line of the Cartwright, and which, by reason of the houses and dwellings called for, marks it on the ground according to appellees' contention.

The field notes of the Shepard survey, made in 1879 for the East Line & Red River Railroad; the Morris & Cummings survey, made in 1875; a Land Office map, of date 1881, showing the locations of the Cartwright and adjoining surveys in accord with appellees' contention, and the legislative act of 1846, fixing the lines between Colorado and Wharton counties as the east line of the Cartwright, were also admitted over objections, and by assignments 18 to 21, inclusive, are presented. The further objection urged against the admission of these matters is, that copies of field notes of adjoining surveys made subsequent to the one in controversy are not admissible on the issue of general reputation, nor for any purpose. In order for general reputation as to the location of an ancient boundary to be admissible, the boundary must appear to have been of such interest in the neighborhood as to have provoked discussion and attracted general attention. The fact that the northeast corner of the Cartwright was made the basis of adjoining surveys made many years ago, and that the Cartwright east line and northeast corner was by act of the Legislature in 1846 made a part of the boundary of two subdivisions of the State, was, it seems to us, admissible upon the issue of local public interest in the location of the corner to form a basis for the admission of the evidence of general reputation which was also adduced. Stroud v. Springfield, 28 Texas, 669; Clark v. Hills, 67 Texas, 141.

Appellants cite authority in support of the proposition that field notes of adjoining surveys not called for are not admissible to create an ambiguity in the grant in issue. The proposition is sound, nor do we hold them admissible for such a purpose.

Assignments 2 to 15, inclusive, complain of the testimony of J. A. McNeal, who testified by deposition. One of the statements objected to was to the effect that in 1852 there was pointed out to him an old stake at each of the northern corners as now claimed by appellee. That at that time and ever since those points have been generally reputed in the neighborhood to be the northeast and northwest corners of the Cartwright survey. The admission of this statement was opposed on the ground that he was not present when the stake was driven, and that its location could not be shown by hearsay. The witness does not undertake to show its location by hearsay in the sense objected to, but mentions the fact that his attention was called to it years ago for the purpose of identifying the time which his knowledge of repute covers and the point about which he testifies. The fact that the corner was located years before the witness' birth shows that he did not undertake to say who placed the stake. The witness does not claim to remember who first called his attention to it, and testifies to nothing but general repute. Upon this point his testimony was admissible, and none of the objections urged are meritorious.

The reputation testified about was formed, if at all, long prior to the suit, according to the testimony of appellees' witnesses. It was general, concurrent and certain as to the subject matter. This being true, the fact that appellants adduced opposing proof upon the point does not render the evidence inadmissible. On the admissibility of the evidence adduced as to general reputation we cite Linney v. Wood, 66 Texas, 22; Alexander v. Gilliam, 39 Texas, 228; Freeman v. Mahoney, 57 Texas, 621.

The twenty-second and twenty-third assignments present for revision the action of the court in hearing the evidence of John Thatcher to the effect that in 1852 he, his father and uncle, a surveyor and two negroes, went to survey a subdivision of the Cartwright league, and that his uncle pointed out to the surveyor a fallen cottonwood on the bank of the river as the southeast corner of the Cartwright. The witness was further permitted to state that the surveyor claimed to find marks upon the tree and expressed himself as satisfied, and that he found bearing trees. The surveyor's name was Herschburger, and he was not shown to have been with the original surveyor when he surveyed the league, or to have known the corner otherwise. All the parties claimed to have been present are dead except the witness. His father was then owner of the land at the time. The witness was detailing a survey which he claimed resulted in the discovery of the stake now claimed to be the northeast corner of the Cartwright, and he testified that, starting from the cottonwood pointed out by his uncle and pursuing a given course a distance which he did not know, they found the stake above named.

The tree he described could not possibly have been one of the beginning corners, not only because the bearing trees, instead of being three varas, were thirty varas away, but from that point as now identified by him the stake in question is several hundred varas too far away. But it was admissible as tending to establish the point at which the league line touched the river at that time. It was proper also to hear the witness detail the circumstances under which his attention was first attracted to the stake, but the declarations of his uncle, if taken to mean that the cottonwood at that time was the river corner, was not admissible. It was not shown either that he was the owner of the land at the time or that he was in a position to know the corner which he undertook to point out. It seems there has never been any dispute as to the west line of the Rabb, which is the east line of the Cartwright. The issue is only as to the length of the line and the changes in the river at the point of contact. The location of the river and the condition of its banks where it touched the Rabb line at that time were material inquiries, and the witness was properly permitted to testify as to the circumstances under which he was called to notice it, and the conditions he found at the time. The weight of his testimony was for the jury. The same witness, after stating that his father, in the survey made by Herschburger, treated the stake as the northeast corner of his land, testified that he ever after claimed to that point. The fact that in demarking his boundaries he claimed that point as one of his corners is admissible, he being the owner of the land at the time and dead at the date of the trial. Russell v. Hunnicutt, 70 Texas, 659. That he ever after claimed the same corner is admissible upon the same principle (the first being proven), especially in a case where general reputation is admissible.

Appellants, by the twenty-seventh and twenty-eighth assignments, assail the action of the trial court in admitting the testimony of appellees' witness Lackey to the effect that he made a survey after the suit was brought, based on corners pointed out by appellee Thatcher as claimed by him in the suit; and in permitting him to give the distances thus found, and especially in permitting him to say that at least fifty surveys based on the northeast corner of the Cartwright as claimed by appellee would be affected by the change proposed by appellants.

We think it was proper to permit the witness to detail the conditions and distances disclosed by his survey according to appellees' theory of the case, measuring from points claimed by appellees in this case as corners controlling this litigation. It was pertinent to the inquiry, but it was error to allow the witness to state the effect appellants' success would have on the other surveys in the community. Such a declaration was calculated to prejudice the jury against appellants.

In the brief of appellants are several objections to the admission in evidence of the declarations of appellee Thatcher to surveyors while making experimental surveys to ascertain the facts, the ground of the objections being that his declarations are not admissible as evidence to

establish the true location of the corners. Of course they are not, and do not appear to have been offered for that purpose. The nature of his claim was a fact in the case already before the jury in his own testimony, and was properly stated to the jury in the charge of the court. The fact that he urged such claims was undisputed. The surveyors in making the experimental surveys could not intelligently detail the results to the jury without indicating beginning points, and they in so testifying stated by way of introduction or inducement that Thatcher pointed them out and identified them as the corners claimed by him. This was manifestly proper, and we shall not notice these objections in detail.

The thirtieth assignment of error presents a matter which, though perhaps harmless in view of other testimony admitted, is error nevertheless, and in view of another trial we so pronounce it. The witness Lackey, county surveyor, was permitted to state that the records of his office had recognized the northeast corner of the Cartwright as claimed by appellees as the corner of Wharton County since 1873. This evidence was objected to because it was secondary. We think the objection should be sustained. If offered in proper form, it was admissible for reasons given in a former part of this opinion on the question of general repute.

The evidence of the witness Tolliver, complained of in the thirty-third assignment, was irrelevant and should have been excluded.

The map or sketch made by Lackey and complained of in the thirty-fourth assignment, was probably inadmissible because compiled by him partly from his own work and partly from other maps not shown either to be official or correct. Railway v. Thompson, 65 Texas, 193. But the bill of exceptions is not full enough to enable us to pass conclusively upon its admissibility.

The court permitted the witness D. W. Jackson to testify over objection that several surveys on the Colorado River made in the "30s" contained excessive acreage, some of them overrunning as much as 1000 acres. This was clearly inadmissible. Such evidence could have no proper bearing where the grant, as in this case, must be constructed on its calls for course and distance.

The court also committed error in permitting counsel for appellee in his argument to the jury to quote the facts in the case of Freeman v. Mahoney, 57 Texas, 621, to comment thereon and to quote from the opinion of Judge Stayton the part with reference to the "ripping up of old land titles." The language was not for the jury's ears. The trial court is forbidden to comment to the jury on the facts of the case upon trial. For a much stronger reason the comments of the higher courts on a similar state of facts should be kept from them. Belo v. Fuller, 84 Texas, 450.

The thirty-seventh assignment assails the part of the court's charge to the effect that the location of the stake in the prairie as the northeast corner of the Cartwright is the controlling inquiry, and if the jury

found where the original surveyor placed it, this would terminate the controversy, according as they found it was placed at the point claimed by plaintiffs or defendants.

We regard this as the most material error committed by the trial court. As already stated, the call for the stake can not be allowed to control the call for distance from the beginning corner. Ordinarily the footsteps of the surveyor must be followed, but he himself is not allowed to contradict the language of the grant. The charge complained of shows that the trial court adopted without modification the theory of the appellee, which, as we have already shown, is not sound.

We suggest another vice in the charge complained of. Under the evidence in this record it is not necessarily true that the contention of either the one litigant or the other is accurate. The jury might conclude there was some vacant land north of the Cartwright, but much less in quantity than claimed by appellant. The charge precludes the possibility of such a verdict.

A material error is presented by the fortieth assignment. The court at the request of defendant gave the following special charge: "In establishing the boundaries of the Thomas Cartwright survey you will consider all the circumstances in evidence. If you believe from the evidence that the Thomas Cartwright was located and surveyed subsequent to the Thomas Rabb league, and that the northwest corner of the Rabb was actually established upon the ground, and that as so established it is now an established and recognized corner, and if you believe by the field notes of the Cartwright and the Rabb * * * that the said northwest corner is located 2200 varas from the northeast corner of the Cartwright, then the jury are authorized, if in their opinion under the evidence and * * * instructions * * * they consider it material and proper to do so, to construct the Cartwright survey by beginning at the northwest corner of the Rabb, and if by so constructing said Cartwright according to its calls you find that the northeast corner of the Cartwright was actually located at the point designated as the corner of the Blundell, G. H. & H. survey No. 1, the E. L. & R. R. and Morris & Cummings surveys, you will find for defendants." It is manifest at a glance that this charge is inconsistent with the theory laid down in a former part of this opinion as controlling this case. But there are other vices in it equally serious. For instance, there is no evidence that the brick monument erected to mark the northwest corner of the Rabb was placed the distance from the river called for in the field notes. It may have been too far; it may not have been far enough. If it was properly placed and ought to control, then appellees' contention as to the location of the northeast corner of the Cartwright is erroneous, for a simple calculation shows it ought to be only 2200 varas north of the brick monument, whereas the corner of the Cartwright as called for by the G. H. & H. survey and marked by a railroad iron, and for the correctness of which appellee contends, is 2500 varas north of the brick monument. The truth is, as the Rabb

northwest corner is not called for in the Cartwright grant, it should be given no absolute weight. It may be considered by the jury as any other circumstance in the case.

The special charge complained of in the forty-first assignment is erroneous for the same reasons which led us to sustain the thirty-seventh assignment.

We do not deem it necessary to discuss the remaining assignments. It may be stated generally that they present no error not disposed of in a general way in this opinion, or else involve questions not likely to arise upon another trial.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*