THATCHER et al. v. MATTHEWS et al.

(No. 5523.)

(Court of Civil Appeals of Texas. Austin. Dec. 8, 1915. Rehearing Denied Jan. 26, 1916.)

1. APPEAL AND ERROR ☞635 — RECORD ON APPEAL — STATEMENT OF FACTS — SUFFICIENCY.

The Court of Civil Appeals is justified in refusing to reverse a cause where the plaintiff in error brings up a statement of facts which fails to show what the testimony actually was.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2285, 2776–2782, 2829; Dec. Dig. ☞635.]

2. BOUNDARIES ☞43—ESTABLISHMENT—NATURE OF ACTION—JUDGMENT—SUFFICIENCY.

In a suit to establish boundaries, in form of trespass to try title, the judgment need not recite the boundaries established, but it is sufficient if the corners are established by monuments and barriers, if such a description would enable the sheriff to put the successful party in possession.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 208; Dec. Dig. ☞43.]

3. PUBLIC LANDS ☞176—PATENT—EFFECT.

One holding a patent from the state to certain lands can recover such lands, unless his patent conflicts with a prior survey admitted to be owned by another party.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. ☞176.]

4. APPEAL AND ERROR ☞994, 1003 — REVIEW—QUESTIONS FOR JURY — WEIGHT OF EVIDENCE—CREDIBILITY OF WITNESSES.

In an action to determine boundaries, the jury are the judges of the credibility of witnesses and of the weight of the testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3901–3906, 3938–3943; Dec. Dig. ☞994, 1003.]

5. BOUNDARIES ☞37—ESTABLISHMENT—SUFFICIENCY OF EVIDENCE.

Evidence *held* sufficient to sustain the findings of the jury as to proper location of boundaries of plaintiff's land.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. ☞37.]

6. APPEAL AND ERROR ☞1053 — HARMLESS ERROR—CURE OF ERROR.

Where a statement was erroneously admitted as to a county boundary dispute, the error was cured by instructing that the instant action to settle boundaries between parties had nothing to do with the other controversy, especially where the statement had been on file for 6 years and was used on a former trial without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. ☞1053.]

7. BOUNDARIES ☞36 — EVIDENCE ☞342 — DOCUMENTARY EVIDENCE — GOVERNMENT RECORDS—ADMISSIBILITY.

Although a map was made subsequent to the bringing of an action to define boundaries between private lands, a copy of such map certified from the land office archives was admissible in the action under Rev. St. art. 3696, providing that such copy shall be received as evidence in all cases where the original would be evidence.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 160–162, 164, 166–176; Dec. Dig. ☞36; Evidence, Cent. Dig. §§ 1302–1314; Dec. Dig. ☞342.]

8. APPEAL AND ERROR ☞692—BILL OF EXCEPTIONS—SUFFICIENCY.

Where a bill of exceptions stated that one party offered to prove certain things by a witness, that was sufficient as an allegation that the witness would have so testified.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2905–2909; Dec. Dig. ☞692.]

9. BOUNDARIES ☞35—ESTABLISHMENT—EVIDENCE—ADMISSIBILITY.

In an action to establish boundaries between private lands, it was not error to exclude testimony that the witness knew where people living around surveys recognized the boundaries thereof to be, since such testimony did not show that the witness knew where the corners were, nor where they were claimed to be by general reputation, nor where the owners claimed they were.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 153–155, 157–159, 163, 165, 177–183; Dec. Dig. ☞35.]

Error from District Court, Colorado County; M. Kennon, Judge.

Action by John Matthews and others against John Thatcher and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

See, also, 33 Tex. Civ. App. 133, 76 S. W. 61; 105 S. W. 1006.

A. J. Wirtz, of Eagle Lake, and Carothers & Brown, of Houston, for plaintiffs in error. J. J. Mansfield, of Columbus, S. L. Green, of Houston, and W. L. Adkins, of Columbus, for defendants in error.

Findings of Fact.

JENKINS, J. This is a boundary suit, the issue being whether or not the survey patented to John Matthews conflicted with the prior

survey in the name of Thos. Cartwright. The Cartwright survey, league No. 10, was an Austin Colony survey, made by Rowson Alley in 1824, and was one of a number of league surveys made by the same surveyor, beginning at the Kinchloe No. 1, and extending up the Colorado river on the north side to and including No. 13, in the name of James Ross. The relative positions of surveys Nos. 9 to 13, inclusive, as called for in their original field notes, is shown by the following sketch from the Austin Colony map on file in the General Land Office:

No name appears on the survey shown on the sketch as lying north of the Cartwright survey. A sketch of the official map of Colorado county made in 1841 shows the same relative positions of these league surveys and has the name of T. Cochran marked on the survey north of the Cartwright. This survey has evidently been abandoned, as, regardless of where the northeast corner of the Cartwright is situated, the land covered by it is now covered by surveys made in 1873 and subsequently.

The field notes of the Cartwright are as follows:

"Beginning at the S. W. corner of No. 9 (the Rabb league); thence N. 20° E., 13,400 vrs., to a stake in prairie; thence S. 70° W., 2,000 vrs., to stake in prairie; thence S. 20° W., 12,500 vrs., to S. W. corner on cottonwood, marked No. 10, 2 feet dia., from which a mulberry brs. S. 20° W., 10 vrs., 12 in. dia., a cotton brs. N. 20° E., 15 vrs., 4 feet dia.; thence down the Colorado river with the meanders thereof, including in these lines one sitio (league) of land."

The field notes of No. 9 are as follows:

"Beginning at the S. W. corner of league No. 8; thence N. 20° W., 12,500 vrs., to the N. E. corner, stake in prairie; thence N. 20° W., 2,000 vrs., to the S. W. (N. W.) corner, a stake

in prairie; thence S. 20° W., 11,200 vrs., to the S. W. corner on a cottonwood, marked No. 9 and 10, 18 in. dia. a cottonwood brs. N. 87° W., 3 vrs., 9 in. dia. a hackberry brs. S. 78° E., 3 vrs., 7 in. dia.; thence down the river with meanders thereof to the beginning, including one sitio (league) of land."

The Dyer calls to begin at the lower corner of No. 12, and to run thence N. 47° E., 10,300 varas, to "a corner planted in prairie"; thence S. 70° W., 12,500 varas, to the upper corner of No. 10 on the Colorado river.

No. 12 calls to begin at the upper corner of No. 11, giving bearing trees, and to run thence N. 47° E., 10,300 varas, to corner planted in prairie. Thence N. 20° E., 1,000 varas, where another corner was planted in prairie. Thence S. 77° W., 8,900 varas, to river, giving bearing trees. Thence down the river with its meanders to the beginning.

It will thus be seen that, according to the calls in the field notes, Nos. 9 and 10 have a common corner on the river, and that the east line of No. 10 exceeds in length the west line of No. 9, 2,200 varas; that Nos. 10 and 11 have a common corner on the river; and that the west line of No. 10 exceeds in length the east line of No. 11 400 varas, and is 600 varas S. 20° W. from the east corner of No. 12.

The following sketch will serve to illustrate the respective contentions of the parties hereto:

Plaintiffs in error claim river formerly ran as indicated by tracing from point H. through E. to point below A. The evidence does not sustain this contention.

The Cartwright survey, as claimed by defendants in error, is embraced in the lines A, B, C, D, and, as claimed by plaintiffs in error, is embraced in the lines E, F, G, H.

There is no dispute between the parties hereto as to the location of the side lines of the Cartwright survey from E to B, nor from C to H, but the defendant in error contends that the original corners are at A, B, C, and D, while the plaintiffs in error contend that the same are at E, F, G, and H. None of the original trees or stakes called for in the field notes can now be found, and it is doubtful if any of them were ever seen by any one who testified in this case. The plaintiff in error, defendant, claims to have been with a surveyor in 1852, who found what he recognized as a marked tree at the southeast corner of No. 10 at the point E, and also the original stake in the prairie at the point F, called for as the northeast corner. Plaintiff in error was then 12 years old. One of plaintiffs' witnesses, a surveyor, claims to have found the tree called for on the southwest corner at the point D, but that was in 1894 or 1895, when he was surveying a subdivision of the Cartwright survey, and it does not appear that he then knew there was any dispute as to this corner, by reason of which, perhaps, he did not make a careful examination. On the east line of No. 10 there is a brick monument, placed there some time in the 80's by the then owner of a part of No. 9, for the northwest corner of said survey, and it has ever since been, and is now, recognized as the northwest corner of said survey.

At the point "m" on the sketch there is a large rock, some 3 or 4 feet high, which has been, since the memory of man runneth not to the contrary, and still is, recognized as the north corner of the Dyer. The defendant himself testified that ever since he could remember, this rock has been recognized by everybody in that community as the corner of the Dyer.

April 1, 1846, Dyer and Chaney deeded to Foote and Foote a part of the Cartwright survey, beginning on the bank of the river (point "i" in sketch) calling for two bearing trees and running thence N. 20° E., 2,200 varas, to south corner of the Geo. W. Thatcher land (to point "j"); thence N. 70° W., 516 varas, to said Thatcher's southwest corner (to point "k"); thence N. 20° E., 9,153 varas, to stake in prairie (point "l"); thence N. 20° W., 924 varas (point C); thence S. 20° W., 12,500 varas, to river (point D) calling for bearing trees; thence down the river with its meanders to beginning. The record does not show that any of these bearing trees were found. At the time this deed was made, Geo. W. Thatcher, father of plaintiff in error, owned the lower part of the Cartwright survey.

The act creating Wharton county (April 3, 1846) calls for same to cross the river at the southeast corner of the Cartwright survey, and to run thence to the northeast corner of same, and thence N. 45° E., etc. The map of Colorado county, dated 1841, showed the northeast corner of the Cartwright to be located as claimed by defendant in error. The map of said county, dated September 30, 1881, showed said corner to be located as claimed by plaintiff in error. The map of Wharton county, dated April 1, 1906, shows said corner to be located as claimed by defendant in error.

This is the third appeal in this case. See Matthews v. Thatcher, 33 Tex. Civ. App. 133, 76 S. W. 61, and Thatcher v. Matthews, 105 S. W. 1006.

### Opinion.

[1] We feel that we would have been justified in refusing to reverse this case for the reason that plaintiff in error has not brought up a sufficient statement of facts. The statement of facts herein embraces 291 pages, besides 15 maps and sketches. A large part of the testimony is that of surveyors, of which the following is a fair sample:

"I set up my instrument here (indicating) and had the willows and everything cut out until I could see a point there (indicating). * * * It appeared that the erosion was not only at this point (indicating) but was also here (indicating). It cut here (indicating) and there (indicating) too. * * * The way the map shows it comes across there (indicating) and there (indicating). There (indicating) is the first place we crossed it. It runs along in that direction (indicating)."

Presumably the witness had some of the various maps in his hand, and when he said "here" and "there," he indicated the places to which he referred by pointing them out on the map. But as the language is transcribed in the statement of facts, it "indicates" nothing to us. By carefully reading the entire testimony, and comparing it from time to time with the various maps and re-reading portions of it several times, we have been able to surmise what the witnesses meant. He who seeks a reversal at the hands of an appellate court should send up a statement of facts which plainly shows what the testimony was.

[2, 3] Defendant insists that there is no sufficient judgment in this case for the reason that it was agreed that this was a boundary suit, and neither the verdict nor judgment fixes the boundary between the surveys. With this contention we do not agree. It is true, in most boundary suits that it is necessary that the verdict should describe the boundary as found by the jury. Johnson v. Gary, 157 S. W. 237. But the uncontradicted evidence in the instant case shows that corners of defendants in error are established on the ground by monuments and bearings. There is no dispute as to the location of their lines and corners. This suit is in the form of trespass to try title. The defendants in error have a patent from the state, and are entitled to recover the

land sued for, unless it conflicts, in whole or in part, with the prior survey owned by defendant. This was made plain to the jury by the charge of the court. The necessary effect of their verdict for plaintiff is to find that the north boundary line of the Cartwright survey does not extend far enough north to include any part of plaintiff's survey. It was incumbent on plaintiffs to establish this fact; further than this the location of the north line of the Cartwright survey is not material to the issue involved herein. The sheriff would have no trouble in putting plaintiffs in possession from the description in the judgment, which describes the land as described in plaintiffs' petition. Bank v. Webb, 128 S. W. 428.

[4] The plaintiffs in error assign as error that the verdict of the jury is against the preponderance of the evidence to such extent as to show that the same is not based upon the evidence, but is the result of passion and prejudice. While the evidence would have supported a verdict for plaintiffs in error, we do not think that it is against the preponderance of the evidence, the jury being the judges of the credibility of the witnesses and the weight to be given to their testimony; and, certainly, the evidence on the part of defendants in error is sufficient to support the verdict.

[5] There is no question but that the river has shifted considerably since about 1880, since which time the witnesses have observed it, and doubtless it did so prior to that time. For instance, at about 200 yards below where defendant in error claims the southeast corner of the Cartwright to be, it has cut across a narrow bend, leaving the land in that bend upon the north side, where it was formerly upon the south side. Also between the points claimed by the parties hereto as the southwest corner, the river has been eating into the bank and shifting to the east. The evidence as to this is sufficient to account for the west line crossing and recrossing the river between these points. But the evidence, to say the least of it, justifies the conclusion that the river never ran at the point claimed by plaintiff in error as the southwest corner of the Cartwright. At this point (E) there is a depression of some 7 or 8 feet, in which large trees are growing. This depression, claimed by defendant in error to be the old bed of the river as he saw it in 1852, does not connect above with the river, but after extending a short distance west, turns north and then in an easterly direction and recrosses the eastern line, and heads somewhere in the Rabb survey. Between the points E and A there is a growth of large timber. Two of these trees, elms, were cut down, and an expert testified that they were respectively 112 and 125 years old. The soil on each side of the line between these points is not alluvial deposit, but the original black soil of the bottom.

Measuring from the point A, N. 20° E.,

13,400 varas, as called for in the field notes, and thence N. 70° W., 1,862 varas, a point is reached 400 varas north of the corner of No. 11 as it should be according to the distances called for for the west line of No. 10 and the east line of No. 11. But beginning at the point E and running the same courses and distances, the point reached is 1,000 varas, N. 20° E., of the Dyer corner, and extending the line from E to F where plaintiff in error claims the stake planted by Rowson Alley in 1824 was found in 1852, and running thence N. 70° W., 1,862 varas, a point is reached north of the northeast corner of No. 12. If the west line of No. 10 be run from the point G to H, as claimed by plaintiffs in error, it will be 12,980 varas, instead of 12,500 varas, as called for in the field notes; but if it be run from C to D, it will be 12,500 varas. If the brick monument be taken as the correct northwest corner of No. 9, and the point A be taken as its southwest corner, there is an excess of 957 varas in its west line. If the point E be taken as its southwest corner, the excess is 357 varas. There is nothing in the record to show how this point at the brick monument was located as the northwest corner of No. 9.

The land sold by Dyer to Foote in 1847 was presumably surveyed, as it calls for bearing trees at its beginning corner on the bank of the river. These bearing trees cannot now be found, but there seems to be no dispute as to where this corner is. It is on a high bluff of such a nature that the north bank has probably washed in but little since 1824. This bend is indicated by the plat accompanying the field notes made by original surveyor Alley, and while he does not give the meanders of the river, he must have allowed for the same, as otherwise the area of No. 10 would not be correct. This is also true as to bends indicated in the original plat of No. 9. Beginning at this bend in the river, and running courses and distances as called for in the deed, shortening the line from "i" to "j" 7 varas, the north line of No. 10 is reached, as claimed by defendants in error.

Judge Wells Thompson, as administrator of the estate of Foote, subdivided the Foote land, the west part of No. 10, in 1872, up to, but not beyond, the north line, as claimed by defendants in error, and down to the point D. There are rocks at the points B, "l," and C, and there is evidence in the record to the effect that they have been recognized for many years by the owners of No. 10, including plaintiffs in error, as marking the north line of said survey.

Beginning at the point "i" and running S. 70° E. to the east line of No. 10 at the point "n," the distance to the southwest corner of No. 10 should be 2,027 varas. From "n" to A is 2,100 varas, but to the point E is only 1,500 varas. In other words, if we begin at the point "i" and run N. 20° E., 11,366 varas

(allowing 7 varas shortage, as found between "i" and "j") for the north line of No. 10; thence north 70° E. the distance for the northeast corner of No. 10, and thence S. 20° W. to A, we have an excess of 66 varas, which is about as accurate as a line over 7 miles long would ordinarily be claimed. But if we stop the line at E, we have a shortage of 534 varas. The shortage in the north line of No. 10 is 138 varas. This may be accounted for by the surveyor who ran the line in 1852, using the same variation as called for in Alley's field notes, whereas he should have made an allowance for the change in the variation occurring for a period of 28 years. The evidence shows that this change for this time would have amounted to 132 varas. In other words, if the surveyor in 1852 had used the same variation that was used in 1824 in running a line 13,-400 varas, he would have placed the corner 132 varas too far west. The evidence shows that this east line was cut out and marked in 1852, and if in subsequent surveys it was adopted as the true line, and the west line was fixed from the rock marking the Dyer corner, there would be a shortage of 132 varas in the north line of No. 10.

[6] The second assignment of error complains of the action of the court in permitting to be read the statement of counsel in cross-interrogatory to the witness Frazier; that there was a controversy between Colorado county and Wharton county as to the county line. The court instructed the jury that this suit had nothing to do with such controversy, in view of which we do not think the error was material. Besides this, the deposition had been on file for 6 years; it had been used on a former trial hereof, and no objection had been filed as to the manner and form of taking the same, for both of which reasons we overrule said assignment.

[7] The third assignment relates to the admission of a certified copy from the land office of a portion of the map of Wharton county, dated April, 1906; the objection being that said map was compiled 4 years subsequent to the filing of this suit. We think it was admissible as an archive of the land office, regardless of when it was compiled. R. S. art. 3696; Sullivan v. Solis, 52 Tex. Civ. App. 464, 114 S. W. 462. This map showed the northeast corner of No. 10 to be as claimed by defendant in error. Plaintiff in error had previously introduced a map of Colorado county, dated September 30, 1881, showing the northeast corner of No. 10 to be as claimed by plaintiff in error. Stroud v. Springfield, 28 Tex. 670, 671.

We do not think there is any merit in the objection to remarks of counsel, as shown by the fourth and ninth assignments of error.

The certified sketch of Austin Colony surveys was undoubtedly admissible. The assignment of error as to the certificate of

the commissioner of the land office is overruled for the reason that we think it appears therefrom that he was certifying only to matters which appeared from the records of his office, and not as to facts he may have learned aliunde.

[8, 9] We do not agree with the defendants in error that the eighth assignment should not be considered for the reason that the bill of exception does not show what the answer of the witness would have been. The bill shows what plaintiff in error "offered to prove" by the witness, and we think that this is equivalent to stating what the witness would have testified had he been permitted to answer the question propounded. Irrigation Co. v. Dodd, 162 S. W. 946. The fact proposed to be proven by the witness who had testified that he had run out practically all of the side lines of the surveys from No. 1 to 10, was that "he knew where the corners were, as recognized by the people living around these surveys, and that these recognized corners, in almost every instance, were further out from the river than course and distance called for." It will be seen that there was no effort to prove by the witness that *he* knew where any such corners were, nor where they were claimed to be by general reputation, nor where the owners of such surveys claimed them to be, but only where they were recognized to be "by the people living around these surveys." We think that the court did not err in sustaining the objection to this testimony. Stroud v. Springfield, supra.

We do not think that the charge of the court is subject to the criticism made against it in the assignments of error, nor that there was error in refusing the special charges requested.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.