## ·T. T. GAMMAGE v. T. J. POWELL.

(Case No. 5066.)

1. PRE-EMPTION — HOMESTEAD — DONATION — STATUTE CONSTRUED.— Art. 3940, Revised Statutes, was intended to protect land from location by another for the period of thirty days after its occupancy or settlement by one intending to pre-empt it begins. It was intended for the benefit of the occupant seeking a homestead donation, and was never intended to prohibit the occupant from making his application for the land at any time after the expiration of the thirty days, if no location made by a third party intervened.

2. RESERVATIONS — PUBLIC LAND — PRE-EMPTOR — LOCATION — STATUTES CONSTRUED.— Public land situate in Nolan and in other counties mentioned by the act of July 14, 1879, was "appropriated and set apart for sale." The act amendatory thereof of March 11, 1881 (Gen. Laws, p. 25), and the act of January 22, 1883 (Gen. Laws, p. 2), construed in connection with the act of July 14, 1879, and the conclusion announced:

(1) That the eighth section of the act of July 14, 1879, was intended to prohibit any one from locating a purchase or donative homestead pre-emption, such as are provided for by chapters 8 and 9, title LXXIX, Revised Statutes, on lands which, under the terms of the act, had been surveyed for a purchaser, or for any of the other purposes named in the act, and was not intended to leave the land open to ordinary location until such survey was made.

·(2) A patent issued on a location made April 11, 1881, of a headright certificate on land, embraced in the provisions of the act of July 14, 1879, was void; the location itself, being prohibited from being made on the land, was void.

(3) Such a location, made by virtue of a land certificate upon land occupied by a pre-emption settler, after the expiration of thirty days from his occupancy, and before any application of the settler for the land, interposed no bar to the subsequent application of the settler, and to his acquiring a homestead donation. ·

APPEAL from Nolan.    Tried below before the Hon. T. B. Wheeler.

*Gammage & Gregg* and *W. H. Cowan,* for appellant, cited: R. S., arts. 3939–3951, 3940, 3941; Jennings v. De Cordova, 20 Tex., 514; Moore v. Anderson, 30 Tex., 231; De Montel v. Speed, 53 Tex., 342; McKinney v. Grassmeyer, 51 Tex., 376; R. S., 1335, 1195; Lloyd v. Brinck, 35 Tex., 6; Claiborne v. Tanner, 18 Tex., 68; R. S., art. 1368; Austin v. Talk, 20 Tex., 167.

*Boone & Scarborough,* for appellee, cited: McKinney v. Grassmeyer, 51 Tex., 375; Thornton v. Murray et al., 50 Tex., 161, 169; Thomas v. Porter et al., 57 Tex., 59; 39 Tex., 228; 51 Tex., 330; 50 Tex., 224; Called Session 1879, Acts of Leg., pp. 48, 49, ch. 52, sec. 1; 59 Tex., 490; 59 Tex., 518; 49 Tex., 523; 49 Tex., 542, 3d section of syllabus; 51 Tex., 375; Gen. Laws 1877, ch. 145.

STAYTON, ASSOCIATE JUSTICE.— The record shows that the land in controversy is located in Nolan county; that Powell settled on it December 20, 1880, and that he made no application for it as a homestead donation until the 28th of October, 1881. He claims one hundred and sixty acres of land, but the statement of facts does not show that he is the head of a family.

On the 11th of April, 1881, the appellant located the unlocated balance of a headright certificate on a tract of land in Nolan county, which embraces the one hundred and sixty acres in dispute, and on the 18th of October, 1881, the tract was patented under that location.

It is contended by the appellant that the land in controversy was not, within thirty days prior to the time the appellee made his application for a homestead donation, public unappropriated domain, and therefore that his application was ineffective.

By the appellee it is contended, and it was so alleged in his petition, that the location and patent through which the appellant claims the land are void for the reason that the land covered by them was situated at the time of the location and patent in Nolan county, and withdrawn from appropriation by the location of land certificates by the act of July 14, 1879, entitled "An act to provide for the sale of a portion of the unappropriated public lands of the state of Texas and the investment of the proceeds of such sale." General Laws 1879, p. 48.

If it be true that the location and patent under which the appellant claims be void, for the reason that the land had been withdrawn from location and patent under land certificates, then it is unimportant whether the appellee filed his application for the homestead donation within thirty days after his settlement on the land, as provided by art. 3940, R. S.

This article of the statute was evidently intended to protect land from location for the period named, after the settlement or occupancy began, and this for the benefit of the person seeking the homestead donation. If within that period the application was not made, the land, if otherwise subject to location, might be located by another person notwithstanding the occupation; but it was never intended to prohibit a person so occupying land to make his application for the land at any time, however long, after his occupation commenced, if the land was not by some other person appropriated after the expiration of the thirty days from the time the occupation began.

It is equally true that as to a person who had not legally acquired

some interest in the land without notice of the appellee's right, it was unimportant whether the surveyor, as the law required him to do, recorded the application duly filed with him in the book required to be kept by him for that purpose.

The application was duly made and filed, the survey was made within twelve months after the application was made, and it, after. being properly recorded in the surveyor's office with the application for the land, was, about the 20th of October, 1882, sent to the general land office.

These facts would fix the right of the appellee if the other conditions entitling him to a homestead donation existed, and the land had not legally been appropriated by another.

It then only remains to inquire whether the appellant's location and patent are void because on land not subject to appropriation by land certificates, except as the same may be permitted under the homestead pre-emption laws.

The land was situated in Nolan county, and by the act of July 14, 1879 (General Laws, p. 48), all land in that, and in other counties named in it, were declared to be appropriated to certain purposes.

The first section of the act declares: "That all the vacant and unappropriated land situated in the following counties, viz.: Nolan, Mitchell, . . . be and the same is hereby appropriated and set apart for sale, together with all the unappropriated lands situated and being within the Pacific reservation, and together with such separate tracts of unappropriated public domain, situated in organized counties of this state, as contain not more than six hundred and forty acres; *provided*, that the three millions and fifty thousand acres, heretofore appropriated for the building of a state capitol, shall have a preference right of location in the counties heretofore reserved for that purpose. The provisions of this act shall not be so construed as to prohibit the right of pre-empting within the bounds of the reservation here made; but any party shall have the right of acquiring a homestead within this reservation, under the pre-emption laws of this state, as he may have had prior to the passage of this act."

Under the terms of this act the land was "appropriated and set apart for sale" and for the other purposes named in the act prior to the time the appellant made a location upon it, if in fact it was not reserved from general location by former laws.

The word "appropriated," as used in the act, evidently means that the lands designated were set apart for the particular uses

named, to the exclusion of all other uses, and is equivalent to the word " reserved."

The whole tenor of the act evidences this; in fact the act in terms recognizes that the lands embraced in the area designated is a *reservation,* for it declares that " The provisions of this act shall not be so construed as to prohibit the right of pre-empting within the bounds of the *reservation* here made."

The amendatory act of March 11, 1881 (General Laws, p. 25), gives the legislative construction placed on the original act very fully, in that Carson county, which was inadvertently left out of the original act, is embraced in the amendatory act, and the emergency clause to it declares that the necessity for the prompt enactment of the amendment consisted in the fact that the vacant lands in that county were, by the original act, left subject to location. That clause is as follows: " Whereas, the fact that Carson county having been left out of the original law, subjecting the lands in said county to location, creates an emergency that this act take effect from its passage, it is so enacted."

The act of January 22, 1883 (General Laws, p. 2), withdrawing from sale the lands named in the acts before referred to, places the legislative intention beyond all question; for, after withdrawing the land from sale, it declares " that nothing contained in this act shall be construed to return the land *reserved* by ' An act to provide for the sale of a portion of the unappropriated public lands of the state of Texas and the investment of the proceeds of such sale,' approved July 14, 1879, and the act amendatory of such act, approved March 11, 1881, to the mass of the public domain, but the same shall be construed to be *reserved* for the purposes for which said land was originally set apart and designated by said act until the legislature shall otherwise provide."

The eighth section of the act of July 14, 1879, declares that " after the survey of any of the public domain authorized by this act, it shall not be lawful for any person to file or locate upon the land so surveyed, and such file or location shall be utterly null and void."

This section, evidently, was intended to prohibit any one from locating a purchase or donation homestead pre-emption, such as were provided for by chapters 8 and 9, title LXXIX, of the Revised Statutes, on any lands which, under the terms of the act, had been surveyed for a purchaser, or for any of the other purposes named in the act; and was not intended to leave the land open to ordinary location until such surveys were made.

The land located and patented and claimed by the appellant, being within the reservation, the location and patent must be held equally void. Kimmell *v.* Wheeler, 22 Tex., 77; Sherwood *v.* Fleming, 25 Tex. Sup., 427; Woods *v.* Durrett, 28 Tex., 430.

We may say of the act of July 14, 1879, and of the location and patent of the appellant, as was said in Sherwood *v.* Fleming: The former "withdrew the land embraced within the reservation from private or individual appropriation by a colonist or other certificate, and that a location made within the limits of the reservation during its continuance was void. Does a patent issued for lands within the reservation at that time stand upon any higher ground? It would seem, upon principle, that it does not, for the plain reason that the officer had no authority to issue, patents to land thus reserved and set apart from the mass of the public lands, and the act of issuing the patent was void."

This being true, the appellant's location and patent interposed no obstacle whatever to the appellee's acquiring a homestead donation on the land.

Some of the charges of the court as abstract legal propositions were not correct, but under the facts could not have operated injuriously to the appellant.

The appellee, however, was the plaintiff, and it rested on him to prove, even against a trespasser, that he was entitled to the relief which he sought. This he did not do. His proof of occupancy is unsatisfactory, and there was no evidence that he was the head of a family, when, to entitle him to a homestead donation of one hundred and sixty acres of land, proof of this fact was essential.

Matters found in the brief of appellant, based on the idea that the action could not be maintained on a petition filed on February 22, 1883, and subsequently amended, cannot be considered when raised in this court for the first time.

Under the evidence the appellee was not entitled to the judgment rendered, and the judgment of the court below will be reversed and the cause remanded, that the cause may be tried in accordance with this opinion; and it is accordingly so ordered.

REVERSED AND REMANDED.

[Opinion delivered May 23, 1884.]