**PRAIRIE OIL & GAS CO. et al. v. STATE et al. (No. 6530.)**

(Court of Civil Appeals of Texas. San Antonio. March 16, 1921.)

**1. Boundaries ⊂⊃37(1)—Evidence held to justify finding no survey of particular tract made on ground.**

In suit by the state and others to recover from an oil and gas company and others a strip of land, evidence *held* to justify the court's finding that no survey was made on the ground of a particular tract, but that it was merely constructed on the west line, the north and south ends of which were established by a call for natural objects.

**2. Boundaries ⊂⊃3(5)—Lines can be constructed by course and distance where two corners not identified.**

Where the northwest and southwest corners of a survey were identified, and the other two corners not, the east line calling for an uncertain corner, it was permissible to construct boundary lines by course and distance; the evidence tending to show that no actual survey of the land was made by the original surveyor.

**3. Dismissal and nonsuit ⊂⊃24—Plaintiffs can dismiss parties without interest.**

Plaintiffs had the right to dismiss from their suit two parties not shown by the bill of

exceptions to have had any interest, and defendants had no right to interfere to prevent such dismissal.

Appeal from District Court, Travis County; George Calhoun, Judge.

Action by the State of Texas and others against the Prairie Oil & Gas Company and others. From judgment for plaintiffs, defendants appeal. Affirmed.

W. J. Oxford, of Thurber, Vinson, Elkins & Wood, of Houston, and Brooks, Hart & Woodward, of Austin, for appellants.

Black & Smedley, of Austin, C. M. Cureton, Atty. Gen., and E. F. Smith, Asst. Atty. Gen., for appellees.

FLY, C. J. The state of Texas, B. D. Townsend, and A. M. Gillespie sued to recover of the Prairie Oil & Gas Company, the Texas Pacific Coal & Oil Company, L. P. Cunningham, and others, a strip of land 68.2 varas wide at its north end and 18 varas at its south end and about 1,000 varas long, lying between the Mary Fury and the eastern Epperson surveys in Eastland county. The suit resolved itself into one of boundary, or as to the true location of the east line of the eastern Epperson survey, which carried with it the true location of the northeast and southeast corners of said Epperson survey. Appellants claimed the land as a part of the eastern Epperson survey and that the east line of the Epperson survey was the west line of the Fury survey. Appellees claimed that the strip of land lay between the two surveys. The court found that the land in controversy is not a part of the Epperson survey, nor a part of the Mary Fury survey, but is vacant land, and that appellees should recover the same.

The contest in this case is over the title to 7⁵/₁₀ acres of land lying east of the B. H. Epperson survey and west of the most northern line of the Mary Fury survey, and the facts show that the Epperson tract was surveyed by W. Metcalf on August 15, 1872, and the land patented on his field notes on February 19, 1873. The beginning corner calls for the northeast corner of another survey made for Epperson, and calls for two post oaks as bearing trees, from that corner a line 950 varas in length runs south to a corner with two post oaks as bearing trees, thence east to a corner 950 varas, thence north 950 varas to the southwest corner to a survey known as 125, and thence west to the place of beginning. The location of the corner calling for the corner of survey 125 is what caused the trouble. On August 22, 1874, J. E. Gold surveyed the Mary Fury tract, which lies south and east of the Epperson tract. The beginning of the Fury tract is 2,170 varas south of the southwest corner of the Epperson and from that point the call is along the south base line of the Ep-

person east 950 varas to a corner with call for two post oaks as bearing trees. From that point the call is north 950 varas to the northeast corner of the Epperson survey, where two post oaks are called for as bearing trees. If the northeast corner of the Epperson tract is the southwest corner of the survey 125 and the northwest corner of the Mary Fury survey, there is no vacancy between the Epperson and Fury tracts, and appellants should recover. The contest therefore hinged on the location of that corner.

In order to locate the north line of the Epperson survey the court reversed the call and ran the line east from the northwest corner of that tract 950 varas, which did not carry it to the southwest corner of survey 125. The south line of the Epperson tract was also located by reversing the calls. The northwest and southwest corners of the Epperson tract are well established by natural objects. The court found, and the evidence indicates, that the north, south, and east lines of the Epperson tract were not surveyed or marked on the ground by the original surveyor, and the calls made by the surveyor for the south and east lines of the Epperson were made by mistake and on a mere conjecture. The actual distance from the northwest corner of the Epperson tract to the northwest corner of the Fury survey is 1,024 varas, and from the southwest corner of the Epperson survey to the inner corner of the Fury survey is 970 varas. The actual location of the southwest corner of survey 125 was, until recently, in uncertainty. The original inner corner and the northwest corner of the Fury survey are clearly located and identified by the original bearing trees called for in the field notes, and the last named is not at the northeast corner of the Epperson survey. The course from the southwest corner of the Epperson survey to the inner corner of the Fury survey is not east, but north 88° 40′ east, and the distance, instead of being 950 varas, is 970 varas.

[1] We think the court was justified in finding that no survey was made on the ground of the Epperson tract, but that the tract was merely constructed on the west line, the north and south ends of which are established by a call for natural objects. The very fact that there is no call for any natural object at the northeast corner, but a call for a corner of another survey whose location was uncertain, shows that it was an office survey. The tract lies in a woodland country, and, if a survey had been made on the ground, experience and reason teach that bearing trees would have been called for at the corners.

The letters "sto" or "sta," used in the field notes, may be a contraction of the word "stone," or the word "stake," or they may mean neither, for they are unintelligible, and convey no definite idea of any object, natural

or artificial. The use of the letters did not tend to locate any corner. The testimony of Cunningham as to finding a stone at the southeast corner of the Epperson is very unsatisfactory. He stated that the top of the stone was about the size of his fist, but did not know how far it extended in the ground. He claimed to have found that little stone 20 years after the survey was made. He spoke of also finding two witness trees, although none was called for in the field notes. The stone seemed to have been in a road and was moved out of the road, but no one swears to its dimensions. The man who Cunningham said moved the stone was not called to corroborate him, although he was a neighbor. Cunningham really identified only two corners, the northwest and southwest.

W. D. Twichell testified that he had examined the rock pile and the post oak stumps in March, 1919, at the southwest corner of the Epperson survey, and found indications that the rocks had been lying where they were for many years. He made the measurements of the tract and fixed the true corners of it. The pile of rock undoubtedly marked the true southwest corner of the eastern Epperson survey. The southwest corner of No. 125, being also the southeast corner of No. 126, was not fixed by any natural objects, and its location was uncertain. It was evidently called for in the Epperson survey by mistake, it being conjectured that the north line should run to that corner.

[2] The northwest and southwest corners were identified by appellees, and the other two corners not being identified, the east line calling for an uncertain corner of survey 125, it was permissible to construct the boundary lines by course and distance; the evidence tending to show that no actual survey of the land was made by the original surveyor. Even under the reconstructed survey there is an excess of acreage in the Epperson survey. Luckett v. Scruggs, 73 Tex. 519, 11 S. W. 529; Boydston v. Sumpter, 78 Tex. 402, 14 S. W. 996; Polk v. Reinhard (Tex. Civ. App.) 193 S. W. 687; Gregg v. Hill, 82 Tex. 405, 17 S. W. 838. As said in the last case:

"The north line of the Moore survey being established and identified, the remaining lines should be established by course and distance, though this may involve a disregard for another survey called for through mistake."

That statement of the law is supported by Freeman v. Mahoney, 57 Tex. 626; Boon v. Hunter, 62 Tex. 582; Gerald v. Freeman, 68 Tex. 201; Duff v. Moore, 68 Tex. 270, 4 S. W. 530; Stein v. Roberts (Tex. Civ. App.) 217 S. W. 166.

[3] It was not error to overrule the application of appellants for a continuance. Bond and Bowers were not shown by the bill of exceptions to have any interest in the suit,

and appellees had the right to dismiss them from the suit, and appellants had no right to interfere to prevent such dismissal. Railway v. Howell, 101 Tex. 603, 111 S. W. 142. The motion for continuance was not verified by affidavit.

The judgment is affirmed.