**MAGNOLIA PETROLEUM CO. v. JONES et al.**

No. 5663.

Court of Civil Appeals of Texas. Texarkana.

Jan. 18, 1940.

Rehearing Denied Feb. 22, 1940.

On Second Motion for Rehearing
Jan. 15, 1942.

Florence & Florence and Russell Surles, both of Gilmer, Saye & Saye, of Longview, and Walace Hawkins, Chas. B. Wallace, and W. H. Francis, all of Dallas, for appellant.

Edwin M. Fulton and W. C. Hancock, both of Gilmer, for appellees.

JOHNSON, Chief Justice.

This appeal is from an interlocutory order appointing a receiver after notice and hearing.

In the main suit J. T. Jones and others are suing the Magnolia Petroleum Company to recover title and possession, and for partition, of .73-acre of land, a portion of the W. M. King HR Survey in Upshur County, alleging that plaintiffs and defendant are joint owners, and together are the sole owners of the land in controversy; that the aggregate of the undivided interests owned by the plaintiffs is ⅚ of the land and that owned by the defendant is ⅙; that defendant has unlawfully entered upon the land and dispossessed plaintiffs and is holding exclusive possession from plaintiffs; that the land is located in the East Texas oil field and is capable of producing oil; that it is immediately surrounded by producing oil wells, owned by defendant and others, to the North, South, East and West; that said offset wells are now and have been for some time past continuously draining the oil and gas from under the land in controversy; that unless a receiver is appointed the property will be greatly diminished in value by reason of such drainage, to the extent that all the oil and gas will have been drained .therefrom and the property rendered valueless for oil and gas by the time the lawsuit is finally determined; and that such loss is irreparable. Plaintiffs prayed for appointment of a receiver with powers to drill for and produce oil from the property, and to fix liens thereon for purposes of such development.

The defendant answered by general demurrer, general denial, and a plea of not guilty to the main suit. To the application for receiver defendant specially denied that plaintiffs owned any interest in the land or that plaintiffs were entitled to possession of same, or any part thereof.

The application for receivership, after being set down for hearing and notice thereof given, was heard with all parties present. Upon the evidence submitted the court found that plaintiffs and the defendant were joint and sole owners of the land, surface and minerals; the several undivided interests of each being as follows: that defendant Magnolia Petroleum Company owns an undivided $\frac{1}{6}$ of the surface and minerals; that W. E. Jones (a person of unsound mind) owns $\frac{1}{6}$ of the surface and minerals; plaintiffs J. T. Jones, A. E. Jones, Seaborn Jones, and Fannie Green each own $\frac{1}{6}$ of the surface and $\frac{1}{12}$ of the minerals, subject to an oil and gas lease executed by them conveying to B. C. Cook a $\frac{7}{8}$ leasehold on their $\frac{4}{6}$ undivided interest; plaintiff B. C. Cook owns the $\frac{7}{8}$ leasehold on said $\frac{5}{6}$ interest; and plaintiff W. C. Hancock owns $\frac{4}{12}$ of the minerals subject to said oil and gas lease held by Cook; that the land is surrounded and being drained of its oil and gas by producing offset wells, by reason of which it is being greatly diminished in value and suffering irreparable loss. The application for receivership was granted and H. V. Davis was appointed receiver with general powers to do all things necessary to drill for and to produce oil from said land, and to fix liens thereon for such purposes. The defendant Magnolia Petroleum Company has appealed from the order.

Appellant contends that the testimony (introduced over appellant's objections) of appellees' witness G. L. Jones, and the testimony of W. E. Jones tending to corroborate that of G. L. Jones, identifying certain trees marked by the surveyor, J. M. Pardue, to show where upon the ground he, Pardue, actually surveyed the North and West lines of a 50-acre tract of land conveyed by .G. W. Jones and wife to G. L. Jones was inadmissible. Determination of the contention requires stating some of the attending facts and circumstances in evidence under which the testimony objected to was admitted. In 1893 P. S. Harris conveyed to G. W. Jones, then married to Ella Jones, a tract of land containing 120 acres out of the W. M. King Survey. In 1916 G. W. Jones joined by his wife, Ella, con-

veyed to G. L. Jones, one of their sons, fifty acres out of the West portion of said 120-acre tract. Said fifty acres was described in said deed as follows:

"Beginning at the SW cor. of the one hundred and twenty (120) acres tract now owned by G. W. Jones and a part of the W M King Hr Sur. lying about 12 miles SE from Gilmer, Texas, in Upshur County;

"Thence East with the S L of the King Survey 297 vrs a stone for cor;

"Thence North 950 vrs to stone for Cor. two small pine for pointers;

"Thence West with the north line of the said G. W. Jones tract 297 vrs to a stone for corner;

"Thence South with West line of said G. W. Jones tract 950 vrs to place of beginning and containing (50) Fifty acres of land."

Location upon the ground of the original West boundary line of the G. W. Jones 120-acre tract is not disputed, its location is agreed to by the parties. The dispute is as to the true location on the ground of the West boundary line of the 50-acre tract. Appellant contends that the West boundary line of said 50-acre tract coincides with the West boundary line of said 120-acre tract. If appellant's contention be sustained, appellees own no interest in the .73-acre in controversy. Appellees contend that the West boundary line of said 50-acre tract is located East of the West boundary line of said 120-acre tract, a distance of 18.6 varas at the North end, and that said two lines converge to a common point at the South end, said point being the S. W. corner of the 120-acre tract, thus making a triangular strip situated between the two lines. If appellees' contention be sustained, they own $\frac{5}{6}$ undivided interest and appellant owns $\frac{1}{6}$ undivided interest in the .73-acre. The field notes (above copied) of the 50-acre tract, incorporated in the deed from G. W. Jones to G. L. Jones, were prepared by J. M. Pardue, a surveyor, from an actual survey of the 50 acres made by him for the Joneses preceding execution of the deed. It appears that when said field notes are followed in an attempt to lay them upon the ground, conflict and ambiguity arises, in that the third call, directing to go (from the undisputably located N. E. corner of the 50 acres), "Thence West with the North line of said G. W. Jones tract 297 vrs to a stone for corner," when surveyed upon the ground, the distance called for falls short

and fails, by 18.6 varas, to reach the N. W. corner of said G. W. Jones' 120-acre tract. Hence the fourth call, directing to go (from the last mentioned stone for a corner), "Thence South * * * 950 vrs to place of beginning" places the West boundary line of the 50 acres *East* of the *West* boundary line of the 120 acres (a distance of 18.6 varas on the North and converging to a common point at the South end), and thus conflicts with the language in the same call directing to go "with the West line of said G. W. Jones tract." In such circumstances and for the purpose of tracing Pardue's footsteps showing where upon the ground he actually ran the West boundary line of said 50 acres, plaintiffs introduced in evidence the testimony of G. L. Jones, who, in substance, testified *that he was present* when the 50-acre tract was surveyed by Pardue; that Pardue began at the established S. W. corner of the G. W. Jones 120-acre tract and surveyed off the 50 acres upon the ground by running East, North, West and South to the place of beginning, the respective courses and distances described in his field notes as subsequently incorporated in the deed; that Pardue marked the S. E. corner with a stone; that he marked the N. E. corner with the stone and two small pines for pointers mentioned in the field notes; that from said N. E. corner Pardue ran West with the North line of the G. W. Jones 120-acre tract "close to 300 varas" (the exact distance being 297 varas). Witness further testified that from said rock called for in the field notes as marking the N. W. corner of the 50-acre tract, Pardue ran a line South to the place of beginning, for the West line of the 50-acre tract; that in running said West line they found marked trees along same, and that Pardue marked some trees along said West line, that at the time of running said West line they thought they were on the West line of the G. W. Jones 120-acre tract; that witness did not then know that the true West line of the 120-acre tract was further West than the line so run and marked by Pardue; that he recently had occasion to go upon the ground again and was able to identify and follow the lines run by Pardue from the markings made by him at the time of his survey.

"Q. Tell the court the trees you recognized (on the West line of the 50-acres as run and marked by Pardue). A. Well, down on the South end of the woods there, there is an oak in there that had a blemish on its side, marked. We speak of it as a cat-face here that we marked * * * then just a little further up the line North, two black jacks stood in there, seemed to be joined in the same stock and sprouted up from the same stump, and the East one is marked on the West side, the other one is not marked. Then up a little further North there is a center pine tree, about two feet in diameter; the next was a post oak; and the last a sassafras, not far from the Northwest corner."

W. E. Jones testified that he surveyed the 50-acre tract about one year after the deed from G. W. Jones to G. L. Jones was executed, and that he recently surveyed it, and that on each occasion he found the marked lines and hacked trees thereon which had been testified to by G. L. Jones as having been marked by Pardue.

It is the contention of appellant that the testimony of G. L. Jones identifying the trees marked by Pardue showing where on the ground he actually ran the West line of the 50 acres; and the testimony of the surveyor W. E. Jones of the existence and location of the marked trees as testified to by G. L. Jones, is inadmissible, because (1) said trees so marked by the surveyor Pardue were not called for in his field notes incorporated in the deed from G. W. Jones to G. L. Jones; and (2) because the field notes description in the deed from G. W. Jones to G. L. Jones is not ambiguous; and (3) because the fourth call in said field notes, directing to run * * * "with West line of said G. W. Jones (120-acre) tract 950 varas to the place of beginning" * * * is controlling, and, as a matter of law, established the West line of the 50 acres to run coincident with the West line of the 120-acre tract.

█ The description of the 50 acres in the deed is not on its face conflicting or ambiguous, but when effort is made to apply those field notes to the ground the conflict and irreconcilable ambiguity shown above arises. The following authorities, and cases in them cited, hold that even though the description in the deed is not ambiguous on its face, yet when effort is made to apply the description to the ground, irreconcilable conflict and ambiguity arises, parol evidence is then admissible to show where upon the ground the line was actually surveyed, and *that persons present* when the survey was made, as well as the surveyor, may

testify to marks made by the surveyor to identify the location on the ground of the line run by him, even though such marks are not called for in the field notes; and when such footsteps of the surveyor are so found and identified they are accepted as evidence of where the parties intended to locate the ambiguously described line; that as a general rule a call for adjoinder is given controlling effect over calls for course and distance, but that such rule is not without its exception and that the call for adjoinder does not as a matter of law control, and may be disregarded, when, as here, it is shown that the surveyor did not actually go to or run with such adjoinder, but called for it through mistake or conjecture as to its location. In Blake v. Pure Oil Co., 128 Tex. 536, 100 S.W.2d 1009, 1013, it is held:

"When the description in field notes or in a deed is both on its face and *in its application to the ground* clear and unambiguous, extrinsic or parol evidence may not be resorted to for the purpose of showing that the surveyor actually ran a line of the survey at a different place from that described in the field notes or deed. Davis v. George, 104 Tex. 106, 134 S.W. 326. But parol evidence is admissible to show where on the ground a survey or a line of a survey was actually made, when the calls in the field notes or deed are conflicting or ambiguous, *or when the effort to apply the description to the ground gives rise to ambiguity."* (Italics ours.)

In State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228, 233, it is held:

"The other proposition presented by defendants in error in support of the trial court's judgment is that, even if Harper did not go on the ground to the northwest corner of the House Remainder survey, the Slade survey must be so constructed as to satisfy the call for the northwest corner and the north line of said House survey, which had been surveyed and marked on the ground seven or eight years prior to Harper's survey of the Slade, and the call for adjoinder must be given controlling effect over the calls for course and distance. The Court of Civil Appeals [87 S.W.2d 867] approved this proposition and made it the basis of its affirmance of the trial court's judgment.

"The proposition announces a correct rule of boundary law applicable in the absence of evidence proving that the call for adjoinder was made in mistaken belief as to the location of the adjoinder, but where the facts conclusively show that the surveyor through mistake or by conjecture called for the adjoinder, the call for adjoinder does not control over course and distance, even though the line or corner called for was marked. In such situation the call for adjoinder will be rejected, as inserted by mistake, and controlling effect given to course and distance from known and undisputed corners, when under the facts of the particular case such construction of· the survey is 'most consistent with the intention to be derived from the entire description.' This method of construction by the rejection of a call for adjoinder inserted by mistake is most consistent with the true intention if its effect is to harmonize the other terms of the field notes and to disregard as few of the calls as possible. See Wilson v. Giraud, 111 Tex. 253, 264, 231 S.W. 1074, 1078; Porter v. State (Tex.Civ.App.) 15 S.W. (2d) 191, 193; Finberg v. Gilbert, 104 Tex. 539, 547, 141 S.W. 82; Gerald v. Freeman, 68 Tex. 201, 204, 4 S.W. 256; State v. Talkington (Tex.Civ.App.) 274 S.W. 314; Cox v. Finks (Tex.Civ.App.) 41 S.W. 95, 99; Gilbert v. Finberg (Tex.Civ.App.) 156 S.W. 507; Lafferty v. Stevenson (Tex. Civ.App.) 135 S.W. 216, 220; Lomax v. Rowe (Tex.Civ.App.) 3 S.W. (2d) 498."

In Gill v. Peterson, 126 Tex. 216, 218, 86 S.W.2d 629, 631, it is held: "Defendant in error in support of his position invokes a general rule of boundary law that the location of lines or corners of a survey may not be established or controlled by artificial objects or marks not called for in the field notes. Reast v. Donald, 84 Tex. 648, 19 S.W. 795; Runkle v. Smith, 63 Tex.Civ.App. 549, 133 S.W. 745; State v. Talkington (Tex.Civ.App.) 274 S.W. 314; 7 Tex.Jur. p. 147, § 24. But this is not an absolute or unqualified rule. In most of the cases where the rule has been applied there has been no evidence proving when or by whom the artificial object was placed or the mark made, nothing to connect satisfactorily the mark or object with the survey as originally made, or to establish its identity as an original monument or mark. The mark or object is of no probative value if the field notes or grant contain no description of it or no reference to it and there is no evidence directly con-

necting it with the work of the original surveyor. But, on the other hand, when it is clearly shown that the mark was made or the object placed by the surveyor at the time he made his survey and for the purpose of marking a line or corner, then the object or mark has probative value. In Reast v. Donald, supra, where it was held that a rock mound not called for in the field notes could not be regarded as an object indisputably fixing a corner of a survey because the rock mound was not called for in the field notes, the court carefully noted in its opinion that it did not appear when and by whom the rock mound was placed. Other authorities indicate that an object or mark not called for in the field notes is admissible to prove the location of a line or corner of a survey when such object or mark is 'identified by the surveyor who made the survey, or by any other witness who was present with him at the time, as having been so placed to mark his footsteps.' Bearden v. Schenecker (Tex. Civ.App.) 240 S.W. 996, 999; Runkle v. Smith, 63 Tex.Civ.App. 549, 133 S.W. 745; 7 Tex.Jur. pp. 147, 148, § 24. The obvious reason for this qualification of the rule is that testimony of the surveyor who made the marks or of some other person who was present when they were made is direct and primary evidence as to the place where the line of the survey was actually run."

■ The above authorities support the trial court's ruling admitting the testimony of G. L. Jones identifying the marks made by Pardue to show where upon the ground he actually surveyed the West line of the 50-acre tract. The testimony of W. E. Jones that in surveying the 50 acres about one year after Pardue's survey, and again recently, he found the marked trees testified to by G. L. Jones was corroborative of the testimony of G. L. Jones and was admissible for that purpose, Bearden v. Schenecker, Tex.Civ. App., 240 S.W. 996.

■ Appellant further asserts that appellees have not shown a probable right of recovery of any interest in the land. In support of the trial judge's authority to appoint the receiver it was necessary for appellees to show that recovery of an interest in the property was probable. Article 2293, § 1. The assertion that appellees failed to make such a showing is based upon appellant's contention that the above discussed testimony of G. L. Jones was not admissible. The trial court in its judgment found that appellees had shown title to their alleged interest in the land. In the absence of the above discussed testimony of G. L. Jones appellees would not have shown a probable interest in the property. But in view of the above-cited authorities sustaining the admissibility of such testimony we would not be authorized to say that the trial court's judgment is without any evidence to support it. However, this is not intended as an expression of any conclusions we might reach on an adjudication of the title on its merits.

Appellant further contends that the trial judge was without authority to grant the receivership in this case because one of the appellees, B. C. Cook (who owns a 7/8 oil and gas lease on 5/6 undivided interest in the land), was financially able to go upon the land and develop it for oil and gas and that he had made no effort to do so, and that appellant had not interfered with nor sought to interfere with any of the appellees entering upon the land for the purpose of drilling for oil and gas, except in the facts shown in appellant's pleadings in this case (the facts shown in appellant's pleadings being that appellant is in possession of the land, claiming the absolute title thereto, and denying that appellees have any title or interest therein or any right to the possession of same, or any part thereof); and because appellees have not requested appellant to cooperate with them in any plan for the purpose of developing the property. Appellant cites United North & South Oil Co. v. Meredith, Tex.Com. App., 272 S.W. 124, 125, and quotes therefrom the following excerpt:

"Ordinarily, a receiver will not be appointed on the application of a joint owner to manage and control the land owned by tenants in common, where there is no showing that the adverse parties who are co-tenants are in exclusive possession, or are so conducting themselves as to exclude from possession the complaining parties. 23 R.C.L. p. 18, § 12. The reason for this rule is that they are in no way impeded from managing and controlling the property. They are at liberty to enter upon, control, and manage same, and are under no obligation to their co-owners, except to account to them for

their part of the proceeds derived from such management."

Authority to appoint receivers is prescribed by R.S.1925, Article 2293, reading in part as follows:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

"1. In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured. * * *

"4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

The application for receivership in this case is predicated upon the legal grounds prescribed in Section 1 of the statute above quoted, wherein authority is granted to appoint a receiver in an action between parties jointly owning or interested in any property, on the application of the plaintiff or any party whose right to or interest in the property or the proceeds thereof is probable, where it is shown that the property is in danger of being lost, removed or materially injured. The requirements of this section of the statute are met when the applicant has shown (1) his right to recover against his adversary a joint interest in the property, or that such right is probable; and (2) that the property is in danger of being lost, removed or materially injured. Appellant's proposition relates to the issue of fact as to whether the evidence shows that the property is in danger of being lost, removed, or materially injured, or, more specifically speaking, as to whether there is any evidence supporting the trial judge's finding in the affirmative on that issue, or, expressed in other words, the contention, in effect, is to assert that regardless of all other facts in evidence, the facts stated in the proposition show as a matter of law that the property is not in danger of being lost, removed or materially injured. We are unable to agree that such facts, when properly analyzed, carry the conclusive effect contended for. Though he is financially able, it is not shown that Cook or any of the ap-

pellees possessed the skill and ability to develop and conserve the property, nor is it shown to be a practicable matter for one in Cook's position, owning only a ⅞ leasehold on ⅔ undivided interest, to develop the land. The fact that appellees have not attempted to go upon and eject appellant from the land and develop it, and that appellant has not prevented them from doing so other than by claiming the exclusive title and possession, and denying that appellees have any interest therein or any right of possession thereto, does not show that appellees are at liberty to go upon the property and develop it, but such facts raise a contrary inference. Appellant did not tender possession or offer to cooperate with appellees in developing the property, nor is it in any wise shown that a cooperative plan could have been devised for development of the property, as may ordinarily be done in cases of tenants in common where the cotenant in possession is not holding exclusive possession by disputing the joint ownership and right of possession of his cotenant out of possession, and is not himself "mismanaging the common property in such a way as to impair it, or cause its loss," 23 R.C.L. p. 18, § 12, such latter is the character of cases referred to in the above quotation from United North & South Oil Co. v. Meredith. But, as here, where the cotenant in possession is denying that his cotenant out of possession has any title, interest or right of possession, and where it is shown that the property under appellant's possession has for some time past and is now being rapidly and irreparably drained of its oil by appellant, through its offset wells on adjoining property, and is suffering it to be drained by others who own and operate offset wells thereon, it can not in such circumstances be said that the trial judge was without authority to grant the receivership for want of any evidence showing that the property was in danger of being lost, removed or materially injured.

Appellant contends that the case of Combs v. State, Tex.Civ.App., 93 S.W.2d 161, is also authority for its contention that the appointment of a receiver in this case was unauthorized. That case is not in point with the facts here presented. A reading of that case will show that when the pleadings were all in and the parties properly aligned, they showed only an action of trespass to try title, in which absolute title was claimed to all the land by the State of Texas, its patentee, and their lessees aligned as

plaintiff, against the defendants E. E. Combs and others. There was no joint ownership pleaded or claimed between the adverse parties in that case, to bring it within the provisions of Section 1, Article 2293. In determining the issue in that case as to whether the facts shown therein came within the provisions of Sec. 4, Art. 2293, authorizing the appointment of receivers in "cases where receivers have heretofore been appointed by the usages of the court of equity," we held that the hazard of being held liable as a naked trespasser, and thus losing their improvements in the event plaintiff should fail to finally recover title to the land at the end of the lawsuit, was not alone sufficient grounds to authorize appointment of a receiver under such equitable powers of the court.

The judgment is affirmed.

WILLIAMS, J., dissents.

WILLIAMS, Justice (dissenting).

In construing the description in a deed or other grant, the ultimate purpose is to determine what land the grantor intended to convey. 14 Tex.Jur. 910; Ford v. McRae, 128 Tex. 106, 96 S.W.2d 80, and authorities therein cited. "All rules of construction are simply means to a given end, being those methods of reasoning which experience has taught are best calculated to lead to the intention, and generally no rule will be adopted that leads to defeat of the intention." 8 R.C.L. pp. 1037, 1038. The rules of construction discussed in the authorities cited in the majority opinion are merely a reaffirmance of this general rule. In each of above-cited cases, the court has either invoked, modified or made an exception to some rule of construction to give effect to the intent as gathered from the facts of the particular case.

No reason has been advanced in appellees' able brief, and, in my judgment, none can be advanced under this record which discloses an intent of G. W. Jones, the grantor, to reserve or retain the .73-acre parcel of land in controversy. It is further without reason that he would want to retain a tract in such an irregular shape. Being agricultural land, and owning no adjoining property, this strip became inaccessible and practically valueless to this grantor after the sale. From these facts, without resorting to any rule of construction that might be applicable to latent conflicting calls, it is obvious that the grantor intended to convey to the west line of the 120-acre tract. The intent to convey to the west line of the 120-acre tract is further fortified by the calls in the deed to the fifty acres. Here each and every call is to go to or run with a line of the 120-acre tract. It begins at a point in this west line, the southwest corner, and ends there. The south distance call of 950 varas and the courses called for are the same in each deed.

As a general rule, a call to go to an artificial object will prevail over and control a call for distance. 7 Tex.Jur. p. 188, § 50. The marked trees which the witness Jones testified he found and those he said the surveyor marked on a new line are not called for in the deed. The stone called for at a new northwest corner "was neither marked nor described so as to be distinguishable from any other objects of like character." But the west line of the 120-acre tract was established and marked. The call to go south with the "west boundary line of said G. W. Jones 120-acre tract" is an adjoinder call. Carter v. Texas Co., 126 Tex. 388, 87 S.W.2d 1079. To give this adjoinder call the dignity it is entitled to over an undescribed and unmarked stone, Matthews v. Thatcher, 33 Tex.Civ.App. 133, 76 S.W. 61, and over a call for distance, 7 Tex.Jur. p. 188, would be most consistent with the true intention evident from the calls in the deed. It would give effect to each and every call to or with a line of the original tract as expressed in the deed. Only one call, and that for distance, would be disregarded. To give effect to this adjoinder call would be in keeping with the intent so patent that the grantor did not intend to leave an isolated and practically worthless strip of land. Whereas, to give preference to the call for distance over a well established artificial object would disregard two calls in the deed, namely, for adjoinder and to run with the west boundary line.

In my judgment, for the reasons above discussed, this parol evidence to contradict the terms of the deed and the intent of the grantor was inadmissible and appellees do not show a probable right of recovery. Anderson v. Stamps, 19 Tex. 460; Goldman v. Hadley, Tex.Civ.App., 122 S.W. 282; Swann v. Mills, Tex.Civ.App., 219 S.W. 850; 7 Tex.Jur. p. 164, p. 123; 11 C.J.S., Boundaries, p. 621, § 53; State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228.

PER CURIAM.

On January 18, 1940, our Court of Civil Appeals affirmed the judgment of the trial

court, and thereafter, we submitted certified questions determinative of the issues involved to the Supreme Court. Those questions having been answered favorable to the contention of the appellant, we now set aside our order of affirmance, and judgment is entered in accordance with the views as expressed by the Supreme Court in answer to the certified questions. Magnolia Petroleum Company v. J. T. Jones et al., Tex.Com.App., 158 S.W.2d 548.

The interlocutory order appointing a receiver is reversed and such order is set aside and held for naught.

Reversed and rendered